## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JAMIE K. SANDERS, an individual,** | ) | |
| **DENISE J. COFFEY, an individual, and** | ) | |
| **KARIE H. BROOKS, and individual,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 03-CV-0452-CVE-FHM** |
| | ) | |
| **SOUTHWESTERN BELL TELEPHONE,** | ) | |
| **L.P., a Texas Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### OPINION AND ORDER

Now before the Court are defendant's Motion for Summary Judgment (Dkt. # 81),

defendant's Motion in Limine (Dkt. # 147), and plaintiffs' Motion in Limine (Dkt. # 151).

Defendant, Southwestern Bell Telephone, L.P. ("SWBT"),[1] moves for summary judgment on

plaintiffs' claims of gender discrimination in violation of Title VII of the Civil Rights Act ("Title

VII"), 42 U.S.C. § 2000e et seq., age discrimination in violation of the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and fraud.  Plaintiffs allege that defendant

engaged in a pattern and practice of gender discrimination and age discrimination that had a

disparate impact on women and SWBT employees between the ages of forty and seventy.  In

addition, plaintiff Karie H. Brooks ("Brooks") asserts a common law fraud claim.  Defendant argues

that: (1) claims prior to 2002 are time barred; (2) plaintiffs cannot establish a prima facie case of

gender or age discrimination; (3) plaintiffs have no evidence of pretext; (4) plaintiffs have no

---

[1]   Southwestern Bell Telephone Company (Oklahoma) and SBC Communications, Inc., were
terminated as party defendants on July 27, 2006.  Dkt. # 152.

evidence of a pattern and practice of discrimination by defendant; and (5) Brooks' fraud claim lacks merit and is time barred.  As the Court determines herein that summary judgment should be entered for the defendants,  the motions in limine are moot.

## I.

Plaintiffs Brooks ("Brokks"), Jamie Sanders ("Sanders"), and Denise Coffey ("Coffey") were first-level managers in SWBT's Oklahoma Construction and Engineering ("C&E") organization at the time their employment was terminated.  All three plaintiffs are women over the age of forty.  As managers for C&E, plaintiffs' job responsibilities included ensuring that schedules were kept and supervising day-to-day construction activities.  Dkt. # 122, Ex. 14, Job Description.  Sanders and Coffey allege discrimination with respect to their compensation.  C&E terminated plaintiffs' employment during a Reduction in Force ("RIF") in Fall 2002.  According to plaintiffs, SWBT perpetuated a pattern of terminating older female workers in favor of younger male staff.  Plaintiffs allege that the Fall 2002 RIF, as applied to them, was a pretext for illegal discrimination.

The following is a synopsis of the experience, training, job performance, and compensation of Sanders, Coffey, and Brooks, based on the voluminous summary judgment record.  Sanders was hired by SWBT as a Records Clerk on January 14, 1980.  Dkt. # 81, Ex. 2, Sanders Resume.  From 1982 to 1991, Sanders held a secretarial position.  Id.  From August 1991 to February 1992, she worked as a Manager - Financial, and supervised data entry clerks.  Id.  Sanders held the job title of Manager - Engineering Design from February 1992 until she was terminated in November 2002. Id.  As a manager, Sanders was transferred to C&E in February 1997.  Id.  At C&E, Sanders' supervisor was Rick Wooten ("Wooten"), who reported to Dan McNeely ("McNeely"), the C&E Director.  Id., Ex. 4, Wooten Affidavit.  During her work at SWBT, both Wooten and McNeely

2

praised Sanders for her work.  Plaintiff's Response to Motion for Summary Judgment, Dkt. # 103, Ex. 1.  However, according to Sanders, SWBT denied her a promotion in Spring 2001 in favor of a younger man.

In 2002, SWBT paid engineers in Sanders' peer group a range of salaries between $50,011 and $67,670.  Dkt. # 81, at 30, Ex. 4-D.  Sanders' salary was $57,745, which was roughly the average salary of the group.  Id.  Sanders received a higher salary than ten of the fifteen male engineers who reported to Wooten, seven of whom had more years of service than Sanders.  Of the five male engineers who were paid more than Sanders, four had more work experience.  Alvin Breitling was the only male coworker who was paid more despite having equivalent work experience.  Id., Ex. 4-D.  Breitling was paid $195 more than Sanders.  SWBT attributes Breitling's higher salary to higher 2002 performance evaluations.  Id.

Sanders was surplussed from C&E in November 2002.  The Surplus Notification Letter, dated November 13, 2002, stated "we have determined that, effective immediately, your current job position will be eliminated or consolidated with one or more positions."  Dkt. # 106, Ex 8.  In addition to the letter, Sanders received information about the ADEA.  According to Sanders, she pointed to the ADEA paperwork and asked Wooten whether age was the reason she was selected for surplus and Wooten agreed. Dkt. # 103, Ex. 1-C.  SWBT argues that Wooten did not state that Sanders was surplussed because of her age and, further, Sander's version of the conversation portrays a misunderstanding of the purpose of supplying terminated employees with information about their legal rights.  According to Wooten's testimony,  Sanders was selected for the Fall 2002 RIF based on her low productivity.  At the time of her surplus from C&E, Sanders was 48 years old.

3

Coffey was hired by SWBT as a Directory Assistant Operator on October 4, 1976.  Dkt. # 81, Ex. 6, Coffey Resume.  Her supervisor was Mike Harris ("Harris"), who reported to McNeely.  Id., Ex. 3, McNeely Affidavit.  Coffey moved up the ranks in the corporation, from Directory Assistant Operator to Office Records Clerk to Records Clerk, until Harris promoted her to the position of Manager - Construction (Contract Coordinator) in April 2000.  Id., Ex. 5, Coffey Deposition, at 36.  As a Contract Coordinator, Coffey was responsible for coordinating the hiring of contractors who placed cable.  Id. at 38.  In April 2000, Coffey's salary was $46,956, the same as three males promoted at the same time.  Id., Ex. 7-H.  However, when terminated in November 2002, she was paid less than her male counterparts.  SWBT explains that the unequal wages in 2002 were justified because salary increases were proportionate to work performance evaluations and Coffey's lesser salary reflected Coffey's lesser performance.

Coffey worked as a Contract Coordinator in Oklahoma City until she was laid off in November 2002.  During her years at C&E, Coffey often received positive work reviews.  Dkt. # 105, Ex. 15, Coffey Personnel File ("Denise has exceeded the quantity standards that are required for production and contract administration.").  However, following the Spring 2002 RIF, Harris cautioned Coffey that her low work performance reviews placed her job at risk, as she ranked last in the Spring 2002 RIF.  Coffey admits that Harris advised her to "make friends" following the Spring 2002 RIF.  During her time at C&E, Coffey failed to acquire crew supervisory experience.  According to plaintiffs, Harris hired John Starwalt, age 45, in August 2002 to perform Coffey's work functions despite SWBT's assertion that Coffey's position was being eliminated or consolidated.  Defendant disputes this characterization of events and states that Starwalt was transferred from his engineering position in Oklahoma City to the position of Manager - Construction in Oklahoma City

4

based on necessary reorganization following the Spring 2002 RIF.  Dkt. # 81, Ex. 3, McNeely Affidavit.  According to defendant, Starwalt was not transferred with the intent to later displace Coffey.  Starwalt was ranked along with other mangers for the Fall 2002 RIF.  Coffey was laid off in November 2002.  At the time of her surplus from C&E, Coffey was 45 years old.

Brooks was hired by SWBT as a Senior Records Clerk in Oklahoma City on August 16, 1982.  From May 1989 to February 1992, she worked in a secretarial position in St. Louis.  Dkt. # 81, Ex. 9, Brooks Resume.  From 1992 to 2000, Brooks worked as a manager based in Dallas.  Id. In March 2000, she accepted a downgrade to the position of Contract Coordinator, a first-level manager, to return to Oklahoma.  Id., Ex. 8, Brooks Deposition, at 52 ("I took the demotion because I wanted to move home.").  She alleges that defendant fraudulently induced her into accepting the Oklahoma position by promising greater benefits than the job entailed.  Specifically, Brooks was assigned to Project Pronto, a project to install fiber optics for high speed Internet services. According to Brooks, the Project Pronto manager, Jody Caviness, told her that Project Pronto was expected to last from three to five years.  However, the project was cancelled in less than two years. By October 2001, Brooks had learned that Project Pronto would be cancelled.  Id. at 59.

In November 2001, Brooks was denied a promotion which was given to a male coworker, Timothy Thompson.  At that time, Brooks transferred to Enid, Oklahoma.  In September 2002, Brooks worked on a significant project for which she contracted out part of the work due to her lack of experience.  The parties dispute whether Brooks was properly given credit in the staff report for this September 2002 project, with a value of over $500,000.  Although Brooks does not assert a claim of disparate pay, it is nevertheless relevant that her 2002 salary was $64,839.  Dkt. # 81, at 30, Ex. 4-D.  Similar to Sanders and Coffey, Brooks was surplussed in the Fall 2002 RIF.  According

to Brooks, SWBT did not eliminate her position after the RIF but rather hired Eddy Root, age 46, to assume Brooks' former job responsibilities.  Root began working for SWBT in 1975.  Brooks' and Root's positions were consolidated.  The qualifications and rankings of Brooks and Root are discussed infra.  At the time of her surplus from C&E, Brooks was 56 years old.

The RIF, in which Sanders, Coffey, and Brooks lost their jobs, occurred because their employer was facing financial difficulties.  According to SWBT, the company experienced significant loss in its customer base following the events of September 11, 2001, due to a slow economy, unfavorable regulations, and increased competition.  Each plaintiff testified that she does not dispute the business necessity of the Fall 2002 RIF.  See Dkt. # 81, Ex. 1, Sanders Deposition, at 73-74; Id., Ex. 5, Coffey Deposition, at 58; Id., Ex. 8, Brooks Deposition, at 78.  SWBT announced a surplus of managers in Fall 2001, Spring 2002, and Fall 2002.  In the Fall 2001 RIF, SWBT cancelled Project Pronto and all Project Pronto staff were terminated or absorbed into C&E. Id., Ex. 3, McNeely Affidavit, at 2.  In Spring 2002, SWBT surplussed sixteen managers from C&E. Id. at 3.  Plaintiffs survived the Fall 2001 and Spring 2002 RIFs.  Id.

Following the Fall 2001 and Spring 2002 RIFs, SWBT experienced an imbalance of managers in certain locations and transferred several managers among offices.  Id. According to defendant, McNeely and other Area Managers did not know that another surplus was coming when SWBT reorganized and transferred employees in July and August 2002.  Plaintiffs allege that SWBT intentionally transferred younger males to "safe" locations to avoid the November 2002 RIF. Plaintiffs cite the testimony of Jeanne Frailey, Associate Director of Human Relations, Communications and Planning, to suggest that SWBT Area Managers knew of the Fall 2002 RIF in Spring 2002 when they made business decisions concerning transfers.  However, Frailey testified

6

that, while RIFs commonly occur at the end of the year, she does not know when the Fall 2002 RIF was arranged nor by whom. Dkt. # 106, Ex. 20, at 19. Further, according to Frailey, SWBT business units consult with the corporate legal department and the Equal Employment Opportunity department to ensure that RIFs are implemented legally. Id., at 57.

For the Fall 2002 RIF, SWBT Area Managers ranked first-level managers into four groups based on a variety of objective and subjective criteria. Dkt. # 106-9, Ex. 20-5, Management Ranking Criteria. This ranking system was in compliance with corporate procedures for surplus. See Dkt. # 106-7, Ex. 20, Frailey Deposition. Managers who exceeded expectations were classified as Group A;[2] those who met expectations were classified as Group B;[3] those who failed to meet some expectations were identified as Group C;[4] and those who failed to meet expectations were classified as Group D. Fourteen (14) C&E managers were ranked as Group A. Dkt. # 81, Ex. 3-C, Management Ranking Form 2002. No female managers were ranked in Group A. Thirty-seven (37) C&E managers were in Group B, including six (6) female managers. Id.. Fifty-three (53) C&E

---

[2]    Group A qualities are described as: unanimous agreement regarding the employee's performance; everyone knows and admires this person's work; a model leader; consistently strong performer; outstanding accomplishments, and no glaring weakness.

[3]    Group B qualities are described as: meets key objectives; has many significant achievements; achieves substantial results relative to others; able to work independently; solid leadership/interpersonal skills; and effective contributor as both an individual and team player.

[4]    Group C qualities are described as: inconsistent performance, failed to meet some minor objectives, but not critical ones, support/direction regularly needed from peers or manager; requires more time to accomplish tasks/ objectives compared to others; may have occasional difficulties dealing with peers and subordinates (interpersonal skills); overall contribution is less than others as an individual and/or as a team player.

7

managers fell into Group C,[5] including thirteen (13) female managers.  Id.  No C&E managers were

ranked into Group D.  Id.  All plaintiffs were ranked in Group C.  Id.  After this first round of

ranking, employees in Group C were then ranked by performance, skills, experience, and training.

Dkt. # 81, Ex. 3-B.  Plaintiffs allege that the system for classifying managers had a discriminatory

impact on women over forty.

In the Fall 2002 RIF, twenty-three (23) managers left the Oklahoma C&E organization -

either voluntarily or involuntarily.[6]  Of the 23, eleven (11) were men and twelve (12) were women.[7]

Following the Fall 2002 RIF, the manager demographics shifted from 19 of 104 (18%) female staff

to 7 of 81 (8.64%) female staff.  Thus, the concentration of male managers rose from 83% to over

90% following the Fall 2002 RIF.  These statistics are not controlled for variables, such as training

and experience of employees.  Three of the female managers who were surplussed in Fall 2002 were

not "at risk," but rather voluntarily terminated or transferred their employment.  For example, the

only other woman in Coffey's peer group, Leedell Wheeler, was ranked in Group B and was not "at

risk" of termination, but voluntarily terminated her employment.  The two female managers who

voluntarily transferred out of C&E were Marsha Wiseman (Group B) and Paula Henderson (Group

C).  Had Wheeler, Wiseman, and Henderson stayed, the final demographics may have been 10 of

---

[5]     This group includes Starwalt, whom Coffey suggests was immune from the Fall 2002 RIF
        after his transfer to C&E in August 2002.

[6]     A second-level manager, Rick Griffith, transferred to first-level manager in keeping with
        SWBT's reorganization procedures.  Dkt. # 81, Ex. 3, McNeely Affidavit; id., Ex. 10, Saenz
        Affidavit.  Griffith's transfer resulted in a net loss of 22 first-level managers.

[7]     Ten managers, including Brooks and Coffey, were involuntarily terminated.  Eight
        managers, including Sanders, were able to locate positions within SWBT.  Three other
        managers, including Leedell Wheeler, voluntarily terminated their employment to receive
        severance benefits.  Two female managers who were not "at risk" voluntarily transferred
        positions, thereby saving the jobs of others.

81 (12.3%) female staff. C&E retained female managers who had different skills and experience than plaintiffs. Unlike Sanders and Brooks, Kathryn Jones and Terri Hayes had outside plant backgrounds and were retained in the Fall 2002 RIF.

Of the 23 managers who left C&E in Fall 2002, only one was under the age of forty. In other words, over 95% of the managers surplussed were over forty years old. However, this statistic does not take into account the concentration of workers over forty years old in C&E prior to the surplus. Ten of the twenty-five managers retained in Sanders' peer group were older than Sanders, including two 55-year-olds who were the oldest employees in Sanders' group. Coffey was the second to the youngest manager in her peer group. Eight of the nine managers retained in Coffey's group were older than Coffey, including a 50-year-old, who was the oldest manager in Coffey's group, and two 49-year-olds. Several engineers with extensive experience, including Joe Coleman and Richard Hawkins, were placed in Group C. Sanders testified that it was "unimaginable that Mr. Coleman was given a 20 rating (Band C) considering his years of experience. . . . Indeed, all of the experienced Engineers were placed in Band C." Dkt. # 103, Ex. 1, Sanders Affidavit, at 4. Although defendant states that its agents had no knowledge of plaintiffs' ages at the time of the RIF, Wooten marked the names of staff who were "Pension Eligible." Dkt. # 81, Ex. 4-C. While the summary judgment record does not provide the ages of all C&E managers, it does provide what year each manager started work at SWBT. Based on this data, the average years of experience at SWBT is comparable between groups, with the Group A average as over 25 years and the Group C average as approximately 23 years. While this is only one variable considered in ranking, it is nevertheless undermines plaintiffs' allegation that SWBT's ranking system was designed to replace older workers with younger.

9

Included in the summary judgment record is a chart, created by plaintiffs, which compares the experience and education of seventeen C&E managers.  Dkt. # 104, Ex. 7-D.  Brooks and Sanders are two of the seventeen.  Of the remaining fifteen individuals, eleven were hired by SWBT before plaintiffs were hired.  Breitling, a 45-year-old male, was hired in 1980, as was Sanders. Breitling had no bachelor's degree.  Breitling's production is recorded as $333,800 for 2002.  Id. Fisher, a 50-year-old male, was hired in 1982, as was Brooks.  Id.  Fisher also has no bachelor's degree and his 2002 production level is recorded as $281,000.  Id.  Both Breitling and Fisher were ranked in Group B.  The two new hires, Elliot and Brown, came on board C&E in 2000.  Both have bachelor's degrees but relatively little experience.  Elliot, age 51, and Brown, age 34, were ranked in Group B.  Id.  Plaintiffs argue that inconsistencies in ranking based on education and experience reveal defendant's discrimination.

Plaintiffs argue that SWBT's disparate treatment of Root and Brooks when their positions were consolidated is evidence of gender discrimination.  It is undisputed that Brooks had been in her engineering position for only one year while Root had greater engineering experience.  It is also undisputed that Brooks held a bachelor's degree while Root did not.  According to Brooks, she had more experience as a manager at SWBT and had $651,100 to Root's $479,100 in production in 2002.  Defendant states that the report crediting Brooks with over $500,000 in production was falsified and is inaccurate.  McNeely argues that the report submitted by plaintiffs incorrectly credited Brooks for a September 2002 project, over $500,000 in value.  According to McNeely, Brooks had only $7,900 in production in September 2002.  Dkt. # 122, Ex. 15.  Production is only one variable considered in the ranking system.  Notes from the September 26, 2002 Area Managers'

10

meeting show that Brooks was regarded as having "very little experience in C&E." Id., Ex. 4-C. Brooks was ranked in Group C while Root was ranked in Group B.

Defendant argues that it used a transparent and fair ranking system to determine who was subject to the RIF. According to SWBT, relocation was not an option for the Fall 2002 RIF as it was for the previous two RIFs. Therefore, it ranked employees by job title and location. Dkt. # 81, Ex. 3, McNeely Affidavit. Ranking criteria included versatility, attitude, autonomy, supervisory experience, the size of the job and/or specific job titles worked on or held, and outside plant experience. According to SWBT, it terminated plaintiffs because they ranked lower than others in their respective peer groups. Id., Ex. 3-C, Performance Ratings. Plaintiffs admit that they never heard Wooten, Harris, or McNeely make any ageist or sexist comments. Id., Ex. 1, Sanders Deposition, at 153; Ex. 5, Coffey Deposition, at 98; Ex. 8, Brooks Deposition, at 117. Plaintiffs allegation is that SWBT's subjective ranking criteria led to discriminatory impact.

Plaintiffs completed and filed intake questionnaires on March 3, 2003. Dkt. # 109, Ex. 40. Brooks and Coffey filed charges of discrimination with the EEOC on March 28, 2003; Sanders filed her perfected charge on March 31, 2003.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

11

essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted).  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id</u>. at 251-52.

## III.

Plaintiffs allege that they suffered illegal discrimination from a failure to promote and denial of transfer, gender discrimination in violation of Title VII based on the RIF, gender discrimination in violation of Title VII based on unequal pay, age discrimination in violation of the ADEA based on the RIF, and fraud.  For different reasons, defendant is entitled to summary judgment on all of plaintiffs' claims.

**<u>Statute of Limitations under Title VII and the ADEA</u>**

The Court will first address plaintiffs' claims of discrimination which are time barred.  Under Title VII and the ADEA, the aggrieved employee must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged unlawful discriminatory practice. 29 U.S.C. § 626(d)(2);  42 U.S.C. § 2000e-5(e)(1); <u>Duncan v. Manager, Dep't of Safety, City and County of Denver</u>, 397 F.3d 1300, 1310 (10th Cir. 2005).  Failure to comply with this procedural prerequisite will bar a plaintiff's employment discrimination claim.  <u>Dartt v. Shell Oil Co.</u>, 539 F.2d 1256, 1260-61 (10th Cir. 1976) (compliance with statutory time limitation for filing an EEOC charge is a condition precedent before an employee may sue his employer).

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Because each discrete act starts a new clock for filing charges alleging that act, the charge must be filed within the . . . 300-day period after the act occurred." <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113 (2002).  Sanders alleges that she was denied a promotion on the basis of her age and gender in Spring 2001 and Brooks alleges that she was transferred to an undesirable worksite on the basis of her age and gender in November 2001. It is undisputed that neither Sanders nor Brooks filed an EEOC charge prior to filing an intake questionnaire on March 3, 2003.  Thus, plaintiffs' claims premised on discrete acts occurring prior to May 7, 2002 (300 days prior to March 3, 2003) are time-barred.

Plaintiffs argue that the 2001 failure to promote and the 2001 transfer are parts of SWBT's continuing violation of anti-discrimination laws.  However, these incidents are discrete events.  <u>Id.</u> at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment

decision constitutes a separate actionable 'unlawful employment practice.'"); Davidson v. America Online, Inc., 337 F.3d 1179, 1184 (10th Cir. 2003) (holding that "a continuing violation theory of discrimination is not permitted for claims against discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or a refusal to hire."). Summary judgment as to plaintiffs' discrimination claims based on failure to promote and transfer is required based on plaintiffs' failure to satisfy EEOC filing requirements.[8]

## Gender Discrimination under Title VII -- RIF

To survive summary judgment on their remaining gender discrimination claims under Title VII, plaintiffs must satisfy the McDonnell Douglas burden shifting analysis. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). First, plaintiffs must establish a prima facie case of employment discrimination. Id. at 802. Next, defendant must articulate a legitimate nondiscriminatory reason for its employment decision. Id. at 803. Finally, the burden shifts back to plaintiffs to show that SWBT's stated nondiscriminatory reason is mere pretext.

In the context of a RIF, a prima facie case of gender discrimination requires that plaintiffs show that: they are members of the protected class; at the time of the RIF, they were doing satisfactory work; they were terminated despite the adequacy of their work; and there is evidence that the employer intended to discriminate against plaintiffs. Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1166 (10th Cir. 1998).

---

[8]     In an abundance of caution, SWBT defended against a claim of hostile work environment because the subject was broached in plaintiffs' depositions. Plaintiffs did not claim hostile work environment in their EEOC filings, nor in their complaint, and are, accordingly, barred from raising the claim now.

Plaintiffs have established a prima facie case of gender discrimination. As an initial matter, Sanders, Coffey, and Brooks are members of a protected class under Title VII. Plaintiffs have presented evidence that they were terminated despite the adequacy of their work, including SWBT's ranking of plaintiffs in Group C, rather than Group D, and the letters of praise for plaintiffs' work. Within the McDonnell Douglas framework, the fourth element is distinct from the pretext step. Beaird, 145 F.3d at 1166. "A prima facie case of discrimination is one sufficient to raise a presumption of intentional discrimination." Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)). "[A] plaintiff who is fired pursuant to a RIF and who held a similar position to a [male] retained employee can satisfy the fourth element." Beaird, 145 F.3d at 1167 n.4 (this analysis applies to gender- and age-based claims). It is undisputed that SWBT retained male managers in the Fall 2002 RIF. Accordingly, plaintiffs have established a prima facie case of gender discrimination in the RIF, and the burden shifts to defendant.

Under the burden-shifting scheme, once plaintiffs establish a prima facie case of discrimination, a presumption of discrimination arises and the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the challenged employment decision. See St. Mary's Honor Ctr., 509 U.S. at 506-08. According to SWBT, plaintiffs were surplussed due to business hardship resulting from a slow economy, unfavorable regulations, and increased competition. Because defendant has articulated a legitimate nondiscriminatory reason for the RIF, the burden shifts back to plaintiffs to show that SWBT's proffered reason is mere pretext for illegal discrimination.

In a RIF case, a plaintiff can establish pretext in several ways:

First, she can argue that her own termination does not accord with the RIF criteria supposedly employed. . . . But minor inconsistencies in the application of RIF criteria

> may be too insubstantial to allow a reasonable jury to infer that the RIF was
> pretextual. Second, a plaintiff can adduce evidence that her evaluation under the
> defendant's RIF criteria was deliberately falsified or manipulated so as to effect her
> termination or otherwise adversely alter her employment status. . . . One method of
> demonstrating manipulation or falsification of evaluation is to produce evidence that
> a supervisor responsible for assessing her performance displayed ageist animus.
> Third, a plaintiff can adduce evidence that the RIF is more generally pretextual. . .
> . Statistical evidence may, in certain circumstances, be relevant to this purpose.

Beaird, 145 F.3d at 1168 (citations omitted). Plaintiffs argue that statistical evidence and the use

of subjective criterion in C&E rankings prove that SWBT's nondiscriminatory reason is mere

pretext. However, the Court finds that none of plaintiffs' allegations or evidence permits an

inference of pretext.

For statistical evidence to be relevant to the issue of pretext, the evidence must show a

significant disparity and eliminate nondiscriminatory reasons for such disparity. See Fallis v. Kerr-

McGee Corp., 944 F.2d 743, 746 (10th Cir. 1991); Furr v. Seagate Technology, 82 F.3d 980, 986-87

(10th Cir. 1996). Plaintiffs' statistical evidence fails to control for nondiscriminatory reasons for

disparity. While statistical evidence is an acceptable means of proving discrimination, such

"[s]tatistical evidence which fails to properly take into account nondiscriminatory explanations does

not permit an inference of pretext." Doan v. Seagate Tech., Inc., 82 F.3d 974, 979 (10th Cir. 1996).

Plaintiffs' statistical evidence does not permit an inference of pretext because it fails to eliminate

nondiscriminatory explanations for disparate treatment, i.e., that those laid off had lower rankings

than those retained. Rea v. Martin Marietta Corp., 29 F.3d 1450, 1456 (10th Cir. 1994).

Plaintiffs also allege that subjective RIF ranking criteria precludes summary judgment.

Plaintiffs rely on Garrett v. Hewlett-Packard Company, 305 F.3d 1210, 1218 (10th Cir. 2002), for

the proposition that use of subjective criteria in employment evaluations is undisputable evidence

of pretext. Id. at 1218. In Garrett, the plaintiff's employer held meetings where supervisors ranked

each employee from best to worst and promote employees based on these rankings. Id. at 1217. The employer admitted that the rankings could not be verified with objective evidence, other than the opinions of the supervisors. The Tenth Circuit stated that subjective evaluation methods are viewed with skepticism. Id. at 1218. Nevertheless, "the use of subjective criteria does not suffice to prove intentional discrimination." Doan, 82 F.3d at 978.

The Court must determine whether the employment decision was motived by illegal discrimination. See Doan, 82 F.3d at 978 (holding that courts should "not second guess business decisions made by the employer, in the absence of some evidence of impermissible motives.") (citations omitted). Management personnel are allowed to exercise discretion in employment decisions and subjective evaluation criteria do not create an inference of discrimination. Furr, 82 F.3d at 987-88. Although defendant's evaluation system may have some bearing on the issue of pretext, plaintiff must still show that defendant's articulated legitimate nondiscriminatory reason is unworthy of belief. See Pitre v. Western Elec. Co., Inc., 843 F.2d 1262, 1272 (10th Cir. 1988) ("We recognize that when management considers individuals for upper level positions, subjective factors must play some role. Their use does not per se constitute discrimination."). Defendant produced affidavits, deposition testimony, and employment evaluations that rationalize the application of subjective ranking criteria. Plaintiffs have provided no evidence that the rankings were inconsistent with SWBT layoff procedures and have provided no evidence of intentional discrimination.

Plaintiffs' disagreement with their managers' assessments is not sufficient to defeat defendant's motion for summary judgment. See Beaird, 145 F.3d at 1169 (plaintiff "cannot defeat summary judgment by claiming that she would have been retained if different RIF criteria had been used."); Fallis, 944 F.2d at 747 ("even if the jury chose to believe plaintiff's assessment of his

17

performance rather than [the employer's], that choice, standing alone, does not permit a conclusion that [the employer's] version was a pretext for age discrimination.") (citing <u>Branson v. Price River Coal Co.</u>, 853 F.2d 768, 772 (10th Cir. 1988) (holding that it is the manager's perception which is relevant to the pretext analysis and no the plaintiff's subjective opinion of her performance)). Plaintiffs have failed to carry their burden to raise a genuine issue of material fact that defendant's articulated legitimate nondiscriminatory reason for its employment decision is pretextual. Accordingly, defendant is entitled to summary judgment on plaintiffs' claim of gender discrimination in the Fall 2002 RIF.

**<u>Gender Discrimination under Title VII -- Unequal Pay</u>**

Sanders and Coffey allege that SWBT discriminated against them on the basis of gender through disparate pay in violation of Title VII. Plaintiffs assert that, if they produce any evidence that male employees received higher pay than female workers, they are entitled to a trial on this claim for gender discrimination. <u>See</u> <u>Miller v. Automobile Club of New Mexico, Inc.</u>, 420 F.3d 1098, 1115 (10th Cir. 2005); <u>Tidwell v. Fort Howard Corp.</u>, 989 F.2d 406, 409 (10th Cir. 1993) (establishing pay disparity as an element of plaintiff's <u>prima</u> <u>facie</u> case). Defendant argues that the evidence shows that plaintiffs received a salary equivalent to, and in some cases exceeding, that of male counterparts in the C&E organization.

A plaintiff can prove a <u>prima</u> <u>facie</u> case of wage discrimination under Title VII by "showing that she occupies a job similar to that of higher paid males." <u>Sprague v. Thorn Americas, Inc.</u>, 129 F.3d 1355, 1363 (10th Cir. 1997) (quoting <u>Meeks v. Computer Associates International</u>, 15 F.3d 1013, 1019 (11th Cir. 1994)). If plaintiffs come forward with sufficient evidence to prove a <u>prima</u> <u>facie</u> case of gender discrimination, the burden shifts to the defendant to state a legitimate

nondiscriminatory reason for the disparity in pay.  Id.  If the employer meets this burden, plaintiffs must show that the defendant's stated reason is pretextual.  Id.  Plaintiffs bear the burden to show that similarly situated male employees received higher pay.

In Miller, the Tenth Circuit held that the employee did not prove a prima facie case of gender discrimination based on unequal pay.  420 F.3d at 1115.  The plaintiff in Miller alleged that she performed more duties than her male co-workers but received the same pay.  The facts showed that the plaintiff worked more hours than male employees but was also compensated at a higher rate. Plaintiff also argued that the person who replaced her was male and that he received a better salary than plaintiff.  The court found that the new employee was hired for a newly created position and, focusing on the duties of the two positions, decided that the new employee was not similarly situated to plaintiff.  Id.  Miller shows the fact-intensive analysis required to survive summary judgment when a claimant alleges that she received unequal pay.  See also Sprague, 129 F.3d at 1363 (holding that employee did not prove prima facie case of discrimination based on unequal pay, because job duties between employees differed and higher paid workers had more education and experience).

The initial burden is on plaintiffs to come forward with a prima facie case, such as to show which other workers were similarly situated and to introduce evidence of unequal pay.  Nulf v. International Paper Co., 656 F.2d 553, 557 (10th Cir. 1981).  Sanders received greater compensation than then of the fifteen male engineers in her work group.  Of the five male engineers who were paid more than Sanders, four had more years of service than Sanders.  See Doan, 82 F.3d at 979 (holding that similar job titles alone do not satisfy the requirement of similarity between jobs).  Sanders' only evidence of unequal pay is the one male coworker, Breitling, who had the same years of service as she did but received a higher salary.  While Coffey received compensation equal to three male

coworkers[9] at the time that they were promoted in April 2000, the salaries of her male coworkers steadily outgrew her salary over time.  Plaintiffs have presented evidence that similarly situated male coworkers received greater compensation.

Defendant has articulated a legitimate nondiscriminatory reason for any disparity in pay. SWBT states that differences in performance between plaintiffs and male coworkers justify pay disparities.  According to SWBT, Sanders was given a lower performance rating than Breitling.  In addition, Coffey's salary did not rise at the same pace as the salaries of male coworkers because she did not rank as well on performance reviews.  For a claim of gender discrimination based on disparate pay, the employer "must merely proffer non-gender based reasons, not prove them." Sprague, 129 F.3d at 1363 (citations omitted).

In light of defendant's articulated legitimate nondiscriminatory reason, plaintiffs "must show that a discriminatory reason more likely than not motivated the employer to pay her less."  Id. (citations omitted).  It is plaintiffs' burden to show that "there is a genuine issue of material fact as to whether employer's proffered reason is pretextual - - i.e., unworthy of belief."  Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995).  Plaintiffs argue that defendant did not properly account for years of experience when calculating salaries.  Plaintiffs fail to provide evidence, direct or circumstantial, of pretext.  The evidence shows that employees in C&E received a range of salaries, and that Sanders and Coffey received pay equal to or greater  than male colleagues.  Sanders argues that SWBT violated Title VII by paying her less than male coworkers, even though she earned more money than two-thirds of her male coworkers and the one male coworker who earned more based on performance, Breitling, made only $195 more than Sanders.  Meanwhile, Brooks was earning one

---

[9]     The three workers are Dewayne Hendricks, Michael Roush, and Steve Parrot.

of the highest salaries in the group.  There is no evidence that SWBT's compensation system intentionally discriminated against women.  Plaintiffs do not allege that any supervisor made sexist comments or otherwise revealed intent to discriminate on the basis of gender.  Plaintiffs have not provided evidence to raise a genuine issue of material fact that defendant's non-gender based reason for pay disparity is pretextual. After a thorough review of the summary judgment record, the Court finds that defendant's articulated reason for unequal wages is legitimate and not merely pretext for discrimination.  Accordingly, defendant is entitled to summary judgement on the claims of gender discrimination based on unequal pay.

**Age Discrimination under the ADEA -- RIF**

The ADEA provides in pertinent part that it is "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).  ADEA claims based on indirect evidence of discrimination[10] are subject to the <u>McDonnell Douglas</u> burden-shifting framework.  <u>See</u> <u>Beaird</u>, 145 F.3d at 1165; <u>Branson</u>, 853 F.2d at 770 ("Cases brought under the ADEA are subject to the same indirect method of proof used in Title VII cases alleging discriminatory treatment.").

To establish a <u>prima</u> <u>facie</u> case of age discrimination under the ADEA, a plaintiff who is discharged in a RIF must prove that: she is within the protected age group, she was doing satisfactory work, she was discharged despite the adequacy of her work, and there is some evidence the employer intended to discriminate against her in reaching its RIF decision.  <u>Beaird</u>, 145 F.3d at

---

[10]     The only evidence of age discrimination that might be direct is Sanders' claim of Wooten's alleged concession that Sanders was being surplussed because of her age.  Given the different versions of this conversation between Wooten and Sanders, this evidence is at most circumstantial.  <u>See</u> <u>Danville v. Regional Lab Corp.</u>, 292 F.3d 1246, 1249 (10th Cir. 2002).

1165; see Pippin v. Burlington Resources Oil and Gas Co., 440 F.3d 1186, 1192 (10th Cir. 2006). As to the fourth element, a plaintiff may either show that she was replaced by a younger worker or produce "evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." Branson, 853 F.2d at 771. "The fourth element may also be shown by circumstantial evidence that a plaintiff was treated less favorably than younger employees." Jones v. Unisys Corp., 54 F.3d 624 (10th Cir. 1995). Permitting this alternative showing of differential treatment, rather than replacement, accommodates plaintiffs who, in a RIF context, may not have been replaced because their position was eliminated. See Branson, 853 F.2d at 771 ("In reduction-in-force cases, plaintiffs are simply laid off and thus incapable of proving actual replacement by a younger employee.").

Similar to the above analysis of plaintiffs' gender discrimination claim arising from the RIF, plaintiffs have established a prima facie case of age discrimination. All three plaintiffs are over forty years old. SWBT terminated the employment of each plaintiff. The summary judgment record contains information suggestive of the fact that plaintiffs were terminated despite the adequacy of their work performances. SWBT retained managers younger than plaintiffs in the Fall 2002 RIF.

Defendant has advanced a legitimate nondiscriminatory reason for its decision to surplus plaintiffs, namely the RIF. Despite plaintiffs' argument to the contrary, an employer has the burden of production, not proof. As SWBT has carried this burden of production, the presumption of intentional discrimination "drops out of the picture." St. Mary's Honor Ctr., 509 U.S. at 510-11. Plaintiffs "bear the ultimate burden of proving both that the employer's asserted reason was pretextual and that the plaintiff's age was the true reason for the challenged employment decision." O'Connor v. Consolidated Coin Caterers Corp., 84 F.3d 718, 719 (4th Cir. 1996) (citing St. Mary's

22

Honor Ctr., 509 U.S. at 516).  The factfinder may infer discrimination only if plaintiffs produce evidence that defendant's proffered explanation is pretextual and "unworthy of credence." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir.1997).

In support of pretext, plaintiffs have presented statistical evidence that they may have been terminated before younger male counterparts due to a discriminatory motive.  The fact that the majority of surplussed managers in Fall 2002 were over forty does not account for the fact that the majority of managers in C&E were over forty.  As stated supra, "[s]tatistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of pretext." Doan, 82 F.3d at 979.

In the RIF context, plaintiffs must show that SWBT intended to discriminate in disproportionately terminating employees over the age of forty.  Plaintiffs fail to carry this burden. The July 2002 transfers do not indicate intent to discriminate on the basis of age.  While Coffey alleges that SWBT hired Starwalt to replace her, it is undisputed that Starwalt was a July 2002 transfer and Coffey was terminated in December 2002.  Both Starwalt and Coffey were 45 years old in 2002.  The evidence does not support an inference that plaintiffs were replaced rather than their positions terminated.  Further, all managers were older than Coffey and the transferees were either older or less than two years younger than Sanders.  See Munoz v. St. Mary-Corwin Hopsital, 221 F.3d 1160, 1166 (10th Cir. 2000) (holding that a two-year age difference is insignificant).  "[A] prima facie case of age discrimination requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion, and this inference of age discrimination cannot be drawn from the replacement of one worker with another worker

23

insignificantly younger."  Id. (quoting O'Connor, 517 U.S. 308; International Bhd. of Teamsters. v. United States, 431 U.S. 324, 358 (1977)) (internal quotation marks omitted).

Coffey's allegation of discriminatory intent is undermined by the fact that the same supervisor who promoted her, terminated her.  See LeBlanc v. Great American Ins. Co., 6 F.3d 836, 847 (1st Cir. 1993) (noting that it is unlikely that the person who hired the plaintiff and who was nearly the same age would develop an aversion to older employees less than two years later when the same person terminated plaintiff).  Harris promoted Coffey in 2000 and terminated her in 2002. An inference of discriminatory animus is unwarranted.

Plaintiffs attempt to show pretext by questioning the subjectivity of defendant's RIF ranking system and by submitting the fact that a disproportionate number of employees over forty were terminated in Fall 2002.  Garrett, 305 F.3d at 1218 (finding that defendant's ranking system is to be viewed with skepticism). However, the use of subjective criteria for RIF decisions does not suffice to prove intentional age discrimination.  Doan, 82 F.3d at 978.  "Pretext exists when an employer does not honestly represent its reasons for terminating an employee."  Miller v. Eby Realty Group LLC, 396 F.3d 1105, 1111 (10th Cir. 2005).  Plaintiffs have not offered any evidence that their rankings were inconsistent with SWBT layoff procedures.  Plaintiffs' disagreement with their managers' assessments is not sufficient to defeat summary judgment.

Plaintiffs fail to show that SWBT's legitimate nondiscriminatory reason is pretext for discrimination.  "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan, 108 F.3d at 1323

24

(quotations and citation omitted).  Plaintiffs can prove pretext by showing that: their termination was not in accordance with the RIF criteria allegedly used; their evaluations under the RIF criteria was falsified or manipulated; or the RIF itself was pretextual and the employer was not really reducing its workforce.  See Beaird, 145 F.3d at 1168.  However, "[an employer] may chose to conduct its RIF according to its preferred criteria of performance . . . and we will not disturb that exercise of defendant's business judgment."  Id. at 1169. See also Lucas v. Dover Corp., Norris Div., 857 F.2d 1397, 1403-04 (10th Cir.1988) ("This court will not second guess business decisions made by employers, in the absence of some evidence of impermissible motives.").  After thorough review of the summary judgment record, the Court finds no evidence that defendant's business decision to surplus plaintiffs was so "idiosyncratic" or "questionable" as to allow a reasonable factfinder to find discrimination.  Beaird, 145 F.3d at 1169.  Under these circumstances, "[t]here is simply no inference of foul play about [the employer's] choice."  Id.  Defendant is entitled to summary judgment on plaintiffs' ADEA claims.

**Brooks' Fraud Claim**

Brooks does not dispute defendant's statute of limitations defense to her claim of fraud. Accordingly, Brooks' fourth claim[11] is dismissed.  Underlying Brooks' fourth claim is her allegation that defendant perpetuated a fraud against her when, in March 2000, Caviness told her that Project Pronto was expected to last from three to five years.  Project Pronto was cancelled less than two years later.  According to Brooks, this misrepresentation induced her to transfer to the Oklahoma C&E organization.  The statute of limitations for a common law fraud claim is two years and accrues when a plaintiff, in the exercise of reasonable diligence, knew or should have known about the fraud.

---

[11]     Plaintiffs' third claim was dismissed in the January 28, 2004 Opinion and Order.  Dkt. # 14.

Okla. Stat. tit. 12, § 95(A)(3); <u>McCain v. Combined Communications Corp. of Oklahoma, Inc.</u>, 975 P.2d 865, 866-67 (Okla. 1999).   As of October 2001, Brooks knew Project Pronto would be cancelled.  Her fraud claim was not filed until November 6, 2003.  Dkt. # 2.  Accordingly, Brooks' fraud claim is time barred.

**IV.**

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Dkt. # 81) is **granted**.  A separate judgment is entered herewith.  Defendant's Motion in Limine (Dkt. # 147), plaintiffs' Motion in Limine (Dkt. # 151), and defendant's Motion for Extinsion of Time (Dkt. # 171) are **moot**.


**DATED** this 5th day of September, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT